## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND DIVISION

| | | |
|---|---|---|
| **BRITTANY HAMILTON, on behalf of herself and all others similarly situated,** | ) ) ) | **CLASS AND COLLECTIVE ACTION** |
| | ) | **CASE NO. _____** |
| **PLAINTIFF,** | ) ) | **JUDGE _____** |
| **v.** | ) ) | **JURY DEMAND** |
| | ) | |
| **ASHLAND HOSPITAL CORPORATION d/b/a UK KING'S DAUGHTERS MEDICAL CENTER,** | ) ) ) | **NATIONWIDE RELIEF SOUGHT** |
| | ) | |
| **DEFENDANT.** | ) | |

*ELECTRONICALLY FILED*

Comes Plaintiff, Brittany Hamilton ("Plaintiff"), by counsel, on behalf of herself and all others similarly situated, and for her Complaint against Defendant, Ashland Hospital Corporation d/b/a UK King's Daughters Medical Center ("AHC" or "Defendant'), hereby states as follows:

## <u>NATURE OF THE CASE</u>

1.     Wage theft is pervasive and damaging, affecting workers across the United States. It occurs when employers fail to pay employees the full wages they have earned, such as by requiring off-the-clock work, denying overtime pay, or misclassifying employees. Wage theft robs workers and their families of critical income needed for basic necessities, and deprives the government of tax revenue. Wage theft also forces law-abiding businesses to unfairly compete against those that cheat. Ultimately, wage theft erodes worker protections, perpetuates economic inequality, and undermines the principles of a fair and equitable labor market. Addressing this widespread abuse is essential for upholding the rights and dignity of workers nationwide.

1

2.    Defendant has employed Plaintiff as an hourly, non-exempt Security Officer for just under two years. During her tenure, Defendant has had a practice and policy of requiring security officers to take what has been referred to as "working lunch breaks" by Plaintiff's supervisor. During such "working lunch breaks," Plaintiff and similarly situated employees are constantly interrupted and required to report back to their post or deal with myriad issues throughout the hospital complex (e.g., unlocking a door for someone without keys, attending to a patient or visitor issue, relieving another officer from his or her post, jump starting a car, escorting a patient, visitor, or staff member from one part of the facility or complex to another, reporting to a motor vehicle accident on the premises, responding to an incident alongside the Emergency Response Team, etc.). Some days Plaintiff is not permitted to take a break or "working lunch" at all.

3.    Despite this practice, Defendant deducts a half hour of pay from Plaintiff's wages each shift she works to account for the "working lunch break." During days Plaintiff works overtime, Defendant deducts an additional half hour of pay from Plaintiff for a total of one hour of pay deducted. In short, Defendant has failed to compensate Plaintiff for time spent working during such "working lunch breaks." Because Plaintiff is not completely relieved from all duties during the "working lunch breaks," and the breaks – to the extent they even occur – are spent predominantly for Defendant's benefit, Defendant's failure to compensate Plaintiff violates state and federal law.

4.    Plaintiff brings this action for unpaid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010, et seq., and unpaid regular wages in violation of the KWHA.

5.      Plaintiff asserts her FLSA claim as a collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b). Plaintiff asserts her KWHA claims as a class action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23.

## PARTIES

6.      Plaintiff is a citizen and resident of Flatwoods, Greenup County, Kentucky.

7.      Defendant is a Kentucky corporation which conducts business within this judicial district as UK King's Daughters Medical Center. Defendant's principal office is located at 2201 Lexington Avenue, Ashland, Kentucky 41101.

8.      At all relevant times, Defendant is and was an "employer" of Plaintiff and all similarly situated individuals as defined by the FLSA and KWHA.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), 28 USC §§ 1331, 1337, and 1343.

10.     This Court has personal jurisdiction over Defendant because its principal place of business is in Kentucky, and it is organized under the laws of this Commonwealth.

11.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367 because the state law claims arise out of the same set of operative facts as Plaintiff's FLSA claim. Specifically, the FLSA and KWHA claims concern Defendant's practice and policy of auto-deducting thirty minutes of compensable working time per shift for purported meal periods despite failing to provide such meal periods to Plaintiff and other similarly situated individuals. Plaintiff's KWHA claims are so related to the FLSA claim as to form part of the same case or controversy and should be tried in a single judicial proceeding with the FLSA claim.

12.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in Boyd County, Kentucky, conducts business throughout this District and Division, and all or a substantial part of the events and omissions giving rise to the claims occurred in this District and Division. Specifically, Plaintiff and similarly situated employees worked and work for Defendant in this District and Division.

## FACTUAL ALLEGATIONS

13.    Defendant operates a hospital system in Ashland, Kentucky.

14.    Plaintiff has worked for Defendant as a Security Officer since approximately February 20, 2023.

15.    Plaintiff's job duties vary based on her daily assignments. On any given day, Plaintiff is responsible for protecting life and property of all persons on Defendant's medical center premises, patrolling the medical center buildings and grounds to prevent fires, vandalism, and illegal entry, enforcing parking regulations, unlocking doors, delivering newspapers, assisting funeral directors with transportation, and escorting customers as needed.

16.    Plaintiff's duties include: (1) operating security equipment and systems such as CCTV, access control, and burglar alarms, and ensuring such systems are in good working order by conducting maintenance and inspections as needed; (2) warning violators of rule infractions, such as smoking or carrying prohibited items, and apprehending or expelling persons engaging in suspicious activity or criminal acts; (3) watching for and reporting irregularities such as fire hazards, leaking water pipes, and security doors left unlocked; (4) sounding alarm or calling police or fire department in case of fire or presence of unauthorized persons; (5) documenting activities on a Daily Activity Report and maintaining lost and found logs; (6) investigating incidents of unusual circumstances reported by medical center staff, visitors, physicians, or

patients; (7) assisting medical personnel in controlling hostile or combative patients; and (8)
remembering the medical center's emergency policies and procedures and responding to codes
and emergency situations. In other words, Plaintiff performs tasks such as monitoring and
controlling entry and exit points, verifying visitors and hospital staff remain where they should
be and do not access unauthorized areas of the complex, ensuring only authorized personnel are
in restricted areas, assisting with patient safety issues and code situations, responding to potential
security threats or disturbances, intervening in conflicts or escalating situations, escorting
patients or staff members when necessary, patrolling the premises of the complex and various
buildings by foot and in a vehicle, assisting with jump starts and motor vehicle accidents on the
premises, unlocking doors and assisting with lockouts, attending to the front desk, implementing
emergency evacuation procedures and crowd control during critical incidents, documenting
incidents, protecting equipment and hospital property, etc.

17.    Defendant pays and has paid Plaintiff on an hourly basis and Plaintiff is and has
been non-exempt. Other similarly situated employees are and were paid the same or similarly.

18.    Since the fall of 2023, Plaintiff is and was regularly scheduled to work, and did
work, at least 40 hours per week. Prior to the fall of 2023, Plaintiff regularly worked well over 40
hours per week. Other similarly situated employees are and were scheduled the same or
similarly.

19.    Plaintiff contends Defendant has violated and continues to violate the FLSA and
KWHA by having a policy or practice of auto-deducting thirty minutes of compensable working
time per shift for purported meal periods.

20.    The FLSA and KWHA only allow an employer to not pay employees for meal
periods if the employer can satisfy its burden of proving that the employees receive bona fide

meal periods in which they are completely relieved from duty and where the meal period was not spent predominantly for the employer's benefit.

21.     Defendant does not provide a bona fide meal period because Plaintiff and similarly situated employees are never completely relieved from duty even when they attempt to eat a meal. Such meal periods – if they occur at all – are constantly interrupted by Defendant and spent predominantly for Defendant's benefit.

22.     Indeed, when Plaintiff first started working for Defendant, her supervisor, Stephen Craig Williams, advised that security officers who work for Defendant must take "working lunch breaks." In practice, Plaintiff and similarly situated employees are regularly interrupted, expected to remain available and on-call via radio, and required to perform a variety of duties and related tasks if and when they attempt to eat.

23.     For example, Plaintiff's lunch breaks are constantly interrupted by the security dispatcher because Defendant needs Plaintiff to return to a post (e.g., front desk, patrol, or truck), unlock a door for someone who forgot their keys or is locked out, attend to a patient issue or emergency, meet the Emergency Response Team at the location of an incident, relieve another security officer at a different post, jump start a car, escort a patient, visitor, or staff member from one part of the facility or complex to another, report to a motor vehicle accident or other incident in the various parking lots on Defendant's premises, etc. Plaintiff is not permitted to turn off her radio at any point during her shift or "working lunch break," and is expected to respond to the dispatcher's call outs within minutes. The nature of the calls outs make it impossible to attempt to eat while responding and Plaintiff almost always must abandon her attempt to eat entirely and respond.

6

24.     Such interruptions and work tasks occur nearly every shift. Some days Plaintiff is not permitted to take a break at all. Due to workload, patient care needs, and short staffing, Plaintiff and similarly situated employees often do not even attempt to take a meal break. On many occasions, Plaintiff has experienced purchasing food from Defendant's cafeteria just to have the dispatcher interrupt and require her to report to some area of the hospital where food is not permitted or where eating her food while tending to the task at hand would be impossible. The norm for many staff is that they often do not try to take meal breaks. Instead of attempting to take meal breaks, these employees routinely attempt to snack occasionally while working on the floor or simply go hungry and thirsty on a particularly busy day.

25.     Defendant's practice and policy of requiring "working lunch breaks" has resulted in negative consequences for Plaintiff and similarly situated employees. For example, on or around May 22, 2024, Defendant issued a corrective action to Plaintiff for having a drink with her while working despite Defendant not affording her an opportunity to eat or drink during a true lunch break that day. The same month, Plaintiff suffered from a kidney infection after Defendant failed to provide her any breaks and forced her to hold in her urine during long shifts. Later, Plaintiff worked on June 28, 29 and 30, 2024 and was not permitted to take any breaks due to Defendant's work demands and short staffing. As a result, she was unable to drink sufficient fluids while at work and became so dehydrated that she felt too sick to work on July 1. She visited a healthcare provider that day who advised she was, in fact, dehydrated.

26.     Defendant's practice and policy regarding breaks and meal periods affects security officers in the Emergency and Security departments, but upon information and belief, extends to other hourly, non-exempt staff within the hospital.

7

27.     Instead of allowing employees to clock in and clock out for meals, or simply paying these employees for their full shift, Defendant automatically deducts thirty minutes from each such employee's compensable working time each day. When such employees work overtime, Defendant automatically deducts a full hour from each such employee's compensable working time for two purported lunch breaks.

28.     Defendant does not even have a policy or mechanism by which Plaintiff and similarly situated employees may correct erroneous auto-deductions. On days when Plaintiff does not get the opportunity to take even a "working lunch break," she is unable to advise or report to Defendant that an auto-deduction for a meal break that shift would be inappropriate. There is no paper or online time adjustment form to complete, and supervisors do not adjust pay when alerted about the issue.

29.     Similarly, Defendant does not provide an electronic or paper means for individuals to indicate or record that they are in an "on break status" or have returned from same. Rather, Defendant makes the self-serving and reality-blind assumption that a full and unencumbered break was taken at some time during every employee's shift.

30.     Defendant does not have an effective policy or procedure for ensuring that Plaintiff and similarly-situated employees are provided with a 30-minute bona fide meal period. In fact, as alleged above, it has no procedure for keeping track of the time spent on purported meal breaks. Plaintiff and similarly situated employees are simply assumed to have taken 30-minute bona fide meal periods, and their working time is automatically deducted, even though they do not receive such bona fide meal periods.

31.     Defendant is and was familiar with the demands of the healthcare industry in general and specific to its own operations, but it deliberately chose to keep its labor costs lower

by failing to hire sufficient security officers and other staff per shift to allow its employees to take full, uninterrupted meal breaks. Defendant required and permitted its overworked security officers and other staff to work during meal breaks for Defendant's benefit. Defendant knew and expected that Plaintiff and similarly situated employees would work through unpaid meal breaks and this was a daily occurrence. Defendant's supervisory and managerial employees routinely interrupted Plaintiff and similarly situated employees' meal breaks and made work demands upon them. Defendant's supervisory and managerial employees had actual knowledge of the shifts Plaintiff and similarly situated employees worked and that those shifts did not include bona fide meal breaks to the predominant benefit of Defendant.

32.    These policies and practices of Defendant resulted and result in Plaintiff and similarly situated employees receiving less overtime wages than they are entitled to receive under the FLSA and KWHA and less regular wages than they are entitled to receive under the KWHA.

33.    Defendant's policies and/or practices comprising the alleged violations are ongoing and willful. Plaintiff sent a notice letter regarding her allegations and a demand to cease violations immediately to Defendant on September 29, 2024, but Defendant failed to respond or correct its violations. Upon information and belief, Defendant has been on notice that its practice and policy violate federal and state law much earlier than Plaintiff's notice letter. Defendant knew or should have known that it did not provide Plaintiff and similarly situated employees with bona fide meal periods. Given Defendant's supervisory and managerial employees' knowledge from direct observation and from their general knowledge of Defendant's operations and policies that Plaintiff and similarly situated employees regularly worked through uncompensated meal breaks, Defendant had both actual and constructive knowledge that

Plaintiff and similarly situated employees were not compensated at all for their many hours of work during supposed meal breaks, let alone at the relevant agreed-upon hourly rate or legally-mandated time and one-half rate for overtime hours of work.

34.    Evidence reflecting the number of uncompensated meal break hours worked by each employee, as well as their applicable regular and overtime rate, is in the possession of Defendant. Actual damages can be calculated easily once Defendant has produced complete payroll records. The absence of a bona fide meal break makes all unpaid meal break time compensable, and all that remains is to establish the number of shifts worked by Plaintiff and similarly situated employees in the weeks in which they worked more than 40 hours, and the number of shifts worked in which they worked fewer than 40 hours. Each shift worked will entitle such employees to half an hour of pay at either their usual hourly rate or at their time-and-one-half rate, depending upon whether the week in question is one in which forty or fewer hours were worked, or one in which forty or more hours were worked. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists right now in Defendant's timekeeping and payroll databases. The damage calculation itself will be a straightforward accounting process.

35.    Plaintiff and similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity.

36.    Based on the nature of Plaintiff's and similarly situated employees' job duties and their hourly pay basis, there is no FLSA or KWHA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

10

37.    Defendant willfully violated the FLSA and KWHA by auto-deducting between thirty and sixty minutes per day from the compensable working time of Plaintiff and similarly situated employees.

38.    Defendant knowingly failed to pay full overtime wages required by the KWHA within the meaning of KRS § 344.275 and 344.285.

39.    Defendant suffered and/or permitted and/or required Plaintiff and similarly situated employees to work more than 40 hours per week without full overtime compensation of 1.5 times their regular rates.

40.    Defendant knew or should have known its policy and practice of auto-deducting from compensable working time violated the overtime provisions of the FLSA and KWHA.

41.    At all relevant times Defendant intended to deprive Plaintiff and similarly situated employees of the overtime pay and regular pay they were entitled to under the FLSA and KWHA.

## COLLECTIVE ACTION ALLEGATIONS

42.    Plaintiff asserts her FLSA claim pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the following similarly situated employees:

> All hourly, non-exempt employees who were subject to Defendant's policy and practice of auto-deducting from compensable time for meal periods, at any time within three years prior to the filing of this action, or longer if equitable tolling is granted, to the trial of this action (the "Relevant Period") (the "Collective Class").

43.    Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and the Collective Class, having worked pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law. Plaintiff and the Collective Class had substantially similar job requirements and pay

provisions, were subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules – all culminating in a willful failure and refusal to pay Plaintiff and the Collective Class their proper wages due to Defendant's policy and practice of automatically deducting time from compensable pay for meal periods which did not occur.

44.     The claims for relief, which include unpaid wages, overtime compensation, liquidated damages, attorney fees, and costs, are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The Collective Class is readily ascertainable from records Defendant is required by law to maintain. For purposes of notice and other purposes related to this action, the names and addresses of the Collective Class are readily available from Defendant. Notice can be provided to the Collective Class via first class mail to the last address known to Defendant, or to the last telephone number or email address known to Defendant.

45.     Plaintiff has first-hand knowledge that other similarly situated current and former security officers held the same type of position, had the same primary job duties and/or responsibilities, were paid under the same pay system, and were subjected to the same pay practices, policies, and procedures. Plaintiff requests that this Court authorize notice to be circulated to all similarly situated persons informing them of this action and their right to opt-in under 29 U.S.C. § 216(b).

46.     Although the exact amount of damages may vary among the Collective Class in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

47.     Plaintiff's written consent to this action is attached hereto as Exhibit A.

48.    Written consents to join this action will be filed pursuant to 29 U.S.C. § 216(b) as and when executed by other individual plaintiffs.

## CLASS ALLEGATIONS

49.    Plaintiff also brings this action on her own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of the following class of individuals:

> All members of the Collective Class who have been employed by Defendant in Kentucky at any time during the Relevant Period (the "Rule 23 Class").

50.    Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by amendment, in the motion for class certification, or at any other time before final judgment.

51.    Plaintiff is a member of the Rule 23 Class she seeks to represent.

52.    The Rule 23 Class members are readily ascertainable because their names and addresses are readily available from Defendant. The hours and work volume assigned and worked, the position held, and rates of pay for each Rule 23 Class member may also be determined from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses and telephone numbers are readily available from Defendant. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

53.    Upon information and belief, Defendant has employed over 100 individuals as security officers and other hourly, non-exempt positions since 2021. Thus, the Rule 23 class is sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1). Disposition of claims as a class will benefit the parties and the Court.

54.    Plaintiff and the members of the Rule 23 Class share the same pivotal questions of law and fact, satisfying Fed. R. Civ. P. 23(a)(2). Plaintiff and the members of the Rule 23 Class she seeks to represent were and are subject to Defendant's decisions, policies, plans, programs,

practices, procedures, protocols, routines, and rules – all culminating in a willful failure and refusal to pay Plaintiff and the Collective Class their proper wages as alleged herein and as mandated by law. As a result, the Rule 23 Class shares several factual and legal questions, including, for example: (1) whether Defendant's policy and practice of auto-deducting thirty to sixty minutes per day from the compensable working time of Plaintiff and similarly situated employees violates KWHA; (2) whether Defendant failed to pay overtime compensation to the Rule 23 Class in violation of the KWHA; (3) whether Defendant violated the KWHA knowingly and/or willfully; and (4) the proper measure of damages sustained by Plaintiff and the Rule 23 class. Defendant's company-wide policies and practices affected all Rule 23 Class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each class member. Plaintiff and other Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendant.

55.    Plaintiff's claims are typical of the claims of the Rule 23 Class, satisfying Fed. R. Civ. P. 23(a)(3). Defendant's violation of the KWHA is not the result of any Plaintiff-specific circumstances. Rather, it arises from Defendant's common pay policies and practices, which Defendant applied generally to the entire proposed Rule 23 Class, including Plaintiff. Thus, in advancing her own claims, Plaintiff will also be advancing the claims of the Rule 23 Class.

56.    Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class, satisfying Fed. R. Civ. P. 23(a)(4). Plaintiff's interests are shared with the Rule 23 Class and Plaintiff has no interests that conflict with those of the Rule 23 Class. Furthermore, Plaintiff has retained competent counsel experienced in wage and hour litigation under the FLSA, KWHA, and IMWL and representing classes of similarly situated individuals against businesses. Plaintiff has no past or present financial, employment, familial, or other relationship

with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

57.    By implementing the policies and practices alleged herein to the detriment of the Rule 23 Class, Defendant has created a scenario where questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for the fair and efficient adjudication of this matter. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court is empowered to fashion methods to efficiently manage this action as a class action.

58.     Further, this case is well-suited for class action treatment because the burden is on Defendant to prove it properly compensated its employees, including whether any potential exemptions might apply.

59.     Defendant and other employers throughout the Commonwealth of Kentucky violate the KWHA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Workers reluctantly waive their rights to wage claims by remaining silent in an alarming number of cases as a result of these very real risks. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

60.     Accordingly, Plaintiff is entitled to pursue her claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

61.     Plaintiff reserves the right to propose amended class definitions and/or sub-classes in her motions for collective action and/or class action certification, or to add additional class claims under Fed. R. Civ. P. 23, to the extent discovery warrants such amendments or subclasses.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FLSA

62.     All previous paragraphs are incorporated as though fully set forth herein.

63.     Plaintiff asserts this claim on behalf of herself and members of the Collective Class who opt into this action by filing a consent form, pursuant to 29 U.S.C. § 216(b).

64.     Plaintiff and the Collective Class are employees entitled to the FLSA's protections.

16

65.    Defendant is an employer covered by the FLSA.

66.    The FLSA requires covered employes, such as Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, each member of the Collective Class is entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

67.    By auto-deducting from the compensable working time of the Collective Class, Defendant has violated, and continues to violate the FLSA when total working hours exceed 40 in a workweek. Through this practice, Defendant paid and continues to pay these employees less overtime wages than it is required to pay under the FLSA.

68.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

69.    Plaintiff seeks damages for herself and all others similarly situated in the amount of Plaintiff's and each similarly situated employee's unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorney fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE KWHA (OVERTIME WAGE VIOLATIONS)

70.    All previous paragraphs are incorporated as though fully set forth herein.

71.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

72.    Plaintiff and the Rule 23 Class are current or former employees entitled to the KWHA's protections.

73.     Defendant is an employer covered by the KWHA.

74.     KRS § 337.285 requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek.

75.     By auto-deducting from the compensable working time of the Rule 23 Class, Defendant has violated, and continues to violate the KWHA when total working hours exceed 40 in a workweek. Through this practice, Defendant paid and continues to pay these employees less overtime wages than it is required to pay under the KWHA.

76.     Defendant's practice and policy of failing to pay Plaintiff and members of the Rule 23 Class overtime compensation at the rate of one and one-half their regular rate of pay for all hours worked over 40 each workweek violated the KWHA, KRS § 337.285, et seq.

77.     Plaintiff and Rule 23 Class members are not exempt from receiving KWHA overtime benefits because they do not fall within any of the exemptions set forth in the KWHA. *See* KRS § 337.285(2).

78.     Defendant has violated the KWHA with respect to Plaintiff and the Rule 23 Class by, *inter alia*, failing to compensate them for all hours worked and at time-and-one-half overtime rates for all hours worked in excess of 40 per workweek.

79.     By, *inter alia*, implementing the challenged pay scheme to circumvent the overtime requirements of the KWHA as alleged herein, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

80.     As a result of Defendant's violations of the KWHA and applicable regulations, Plaintiff and the Rule 23 Class have been injured and are entitled to recover wages for

uncompensated time, overtime pay, liquidated damages, attorney fees, and costs in an amount to be determined at trial.

81.    Plaintiff seeks all available relief under this cause of action.

## COUNT III
## VIOLATIONS OF THE KWHA (REGULAR WAGE VIOLATIONS)

82.    All previous paragraphs are incorporated as though fully set forth herein.

83.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

84.    Plaintiff and the Rule 23 Class are current or former employees entitled to the KWHA's protections.

85.    Defendant is an employer covered by the KWHA.

86.    This is a claim for unpaid regular hourly wages due to the auto-deduction from compensable working time described herein, for unpaid time in the gap between non-overtime and overtime hours – that is, hours worked that were uncompensated but were not overtime hours or otherwise do not bring Plaintiff's and similarly situated employees' total hours for the workweek above 40 hours. For example, if Defendant compensated an employee for 36 hours in a given workweek while failing to compensate for 2.5 hours due to Defendant's practice and policy of auto-deducting from compensable time, this claim seeks recovery of the regular hourly wages for the 2.5 uncompensated hours.

87.    Plaintiff and similarly situated employees have a right to be paid their regular hourly rates for all time worked for Defendant. These wages were earned and due on each of the applicable pay periods.

88.    The KWHA provides, *inter alia*, that an employer must pay "all wages and salary earned" on regular pay periods and upon termination of employment. KRS § 337.020, et seq.

89.    The KWHA permits deductions from wages in very limited circumstances which

do not apply to Defendant and Plaintiff or the Rule 23 Class. *See* KRS § 337.060.

90.    Defendant did not pay Plaintiff and similarly situated employees their regular

hourly rates (or any compensation) for the auto-deducted compensable working time described

herein. As a result, Defendant violated KRS § 337.020, et seq.

91.    Defendant's conduct alleged herein was willful and/or knowing.

92.    Plaintiff seeks all available relief under this cause of action.

### COUNT IV
### VIOLATIONS OF THE KWHA (UNLAWFUL DEDUCTIONS)

93.    All previous paragraphs are incorporated as though fully set forth herein.

94.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class,

pursuant to Fed. R. Civ. P. 23.

95.    Plaintiff and the Rule 23 Class are current or former employees entitled to the

KWHA's protections.

96.    Defendant is an employer covered by the KWHA.

97.    KRS § 337.060 makes it unlawful for an employer to withhold wages and

prohibits deductions from wages such as deductions for fines, cash shortages, breakage, losses,

etc.

98.    During the Relevant Period, Defendant had a policy and practice of making

unlawful deductions from or charges to the wages of Plaintiff and the Rule 23 Class for meal

periods which Plaintiff and the Rule 23 Class did not take, or which were spent predominantly

for Defendant's benefit.

99.    Defendant made such deductions as part of their willful scheme to cheat Plaintiff

and the Rule 23 Class out of earned wages to which they were entitled under the KWHA.

20

Plaintiff seeks all available relief under this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief on behalf of herself and all others similarly situated:

A.    An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and designation of Plaintiff as Representative of the Collective Class and Plaintiff's counsel as class counsel;

B.    Prompt notice, pursuant to 29 U.S.C. § 216(b), and to Fed. R. Civ. P. 23, of this litigation to all potential members of the class and collective action;

C.    An order permitting this litigation to proceed as a class action pursuant to the KWHA and Fed. R. Civ. P. 23 and designation of Plaintiff as Representative of the Rule 23 Class and Plaintiff's counsel as class counsel;

D.    A finding that Defendant violated the FLSA and KWHA;

E.    A finding that Defendant's FLSA and KWHA violations are willful and not in good faith;

F.    A judgment against Defendant in favor of Plaintiff and all similarly situated employees for compensation for all unpaid and underpaid wages Defendant failed to pay and continues to refuse to pay in violation of the FLSA and KWHA;

G.    Prejudgment and post-judgment interest to the fullest extent permitted under the law;

H.    Liquidated damages to the fullest extent permitted under the FLSA and KWHA;

I.    Litigation costs, expenses, and Plaintiff's attorney fees to the fullest extent permitted under the FLSA and KWHA, and the Federal Rules of Civil Procedure; and,

21

      J.      Such other and further relief as this Court deems just and proper in equity and under the law.

**JURY DEMAND**

      Plaintiff demands a jury as to all claims so triable.

Date: December 30, 2024            Respectfully submitted,

                        */s/ Aleksandr "Sasha" Litvinov*
                        Aleksandr "Sasha" Litvinov (KBA # 95598)
                        **SMITH KRIVOSHEY, PC**
                        867 Boylston Street
                        5th Floor #1520
                        Boston, MA 02116
                        (617) 377-7404 (Main)
                        (617) 202-3409 (Direct)
                        sasha@skclassactions.com

                        *Counsel For Plaintiff, FLSA Collective Plaintiffs, and the Rule 23 Class*