UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NOTHERN DIVISION AT ASHLAND
CIVIL ACTION NO. 0:24-CV-00128-DLB-EBA
***Electronically filed***

BRITTANY HAMILTON, on behalf of
herself and all others similarly situated                    PLAINTIFF

v.

ASHLAND HOSPITAL CORPORATION
d/b/a UK KING'S DAUGHTERS MEDICAL CENTER          DEFENDANT

---

## UK KING'S DAUGHTERS MEDICAL CENTER'S MOTION TO DISMISS

UK King's Daughters Medical Center is an agency and instrumentality of the Commonwealth of Kentucky and entitled to sovereign immunity. On that basis, UK King's Daughters Medical Center, by counsel, moves the Court to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).[1]

### BACKGROUND

On December 1, 2022, the University of Kentucky acquired King's Daughters Medical Center to create UK King's Daughters Medical Center ("UK KDMC"). For that reason, UK KDMC, as an affiliated corporation of University of Kentucky, is a state agency and instrumentality of the Commonwealth.

---

[1] *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("The sovereign immunity guaranteed by [the Eleventh] Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity.").

## A. The University of Kentucky has sovereign immunity.

The University of Kentucky is an "independent body politic"[2] within the Executive Branch of the government of the Commonwealth of Kentucky.[3] As such, it is a public entity subject to the United States and Kentucky Constitutions[4] as well as Kentucky statutes related to public entities,[5] such as the Open Meetings Act[6] and the Open Records Act.[7] The University has sovereign or governmental immunity from suit in the federal courts,[8] the courts of Kentucky,[9] and the courts of other States.[10] The Sixth Circuit and this Court have repeatedly recognized the University of Kentucky is the Commonwealth for purposes of the sovereign immunity in federal courts and under the Eleventh Amendment.[11]

## B. The University's affiliated corporations have the same immunity as the University.

By statute, a twenty-member Board of Trustees governs the University.[12] The Governor appoints sixteen of those members with the confirmation of the State

---

[2]   *Commonwealth ex rel. Beshear v. Commonwealth ex rel. Bevin*, 498 S.W.3d 355, 379–82 (Ky. 2016)
[3]   *University of Kentucky v. Moore*, 599 S.W.3d 798, 806 (Ky. 2019).
[4]   *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022).
[5]   *Kearney v. University of Kentucky*, 638 S.W.3d 385, 399 (Ky. 2022).
[6]   K.R.S. § 61.800 *et seq.*
[7]   *Id.*
[8]   *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).
[9]   *Furtula v. University of Kentucky*, 438 S.W.3d 303, 305 (Ky. 2014); *Withers v. University of Kentucky*, 939 S.W.2d 340, 343 (Ky. 1997).
[10]   *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1492 (2019).
[11]   *See e.g., Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993); *Kentucky Mist Moonshine, Inc. v. University of Kentucky*, 192 F. Supp. 3d 772 (E.D. Ky. 2016); *Coyle v. Univ. of Kentucky,* 2 F.Supp.3d 1014, (E.D. Ky. 2014); *Depperman v. Univ. of Kentucky*, 371 F.Supp. 73, 77 (E.D. Ky. 1974); KRS 44.073(1) ("For purposes of KRS 44.072 state institutions of higher education under KRS Chapter 164 are agencies of the state").
[12]   K.R.S § 164.131(1)(a).

Senate.[13] The remaining four are elected by the University's faculty (two members),[14] staff (one member),[15] and student body (one member).[16]

Under Kentucky law, the Board of Trustees "may organize and operate one (1) or more affiliated corporations to assist it in carrying out its programs, missions or other functions."[17] Once designated as an affiliated corporation, the entity affiliated corporation is "an agent or alter ego" of the University.[18] Consequently, the University's affiliated corporations are subject to the same constitutional and statutory limitations as the University itself, and likewise have the same immunity as the University.[19]

Over the years, the Board of Trustees has created several affiliated corporations including The University of Kentucky Research Foundation,[20] Central Kentucky Management Services, Inc.,[21] and Beyond Blue Corporation.[22] Each of these affiliated corporations is wholly owned by the University and all their boards of directors are either appointed by the Board of Trustees or serve because of their position as senior administrators at the University.

---

[13]   K.R.S § 164.131(1)(a).

[14]   K.R.S § 164.131(3).

[15]   K.R.S § 164.131(4).

[16]   K.R.S § 164.131(5).

[17]   K.R.S. § 164A.610.

[18]   *Autry v. W. Kentucky Univ.*, 219 S.W.3d 713, 719 (Ky. 2007).

[19]   *McGinnis v. Cent. Kentucky Mgmt. Servs.*, 2019 WL 5190887, at *5 (E.D. Ky. 2019).

[20]   *See* Articles of Incorporation of University of Kentucky Research Foundation (then known as the Kentucky Research Foundation); Kentucky Secretary of State Michael G. Adams, https://perma.cc/MFF7-FGKM.

[21]   *See* Articles of Incorporation of Central Kentucky Management Services (then known as Health Care Collection Services, Inc.). *See also Central Kentucky Management Services*, Kentucky Secretary of State Michael G. Adams, https://perma.cc/Z6WT-CXC3.

[22]   *See* Articles of Incorporation of Beyond Blue Corporation. *See also Beyond Blue Corporation*, Kentucky Secretary of State Michael G. Adams, https://perma.cc/GTH3-VWRY.

**C. UK KDMC is an affiliated corporation of the University and has the same immunity as the University.**

**1. The University and King's Daughters enter a joint venture.**

In April 2021, the University, through its affiliated corporation, Beyond Blue Corporation, entered a significant hospital joint venture with King's Daughters Health System, Inc. (KDHS).[23] Beyond Blue and KDHS intended to create new opportunities to serve patients from the greater Ashland/Tri-State community that reaches across northeastern Kentucky, southeast Ohio, and West Virginia.[24] Working more closely together, the joint venture expanded access to specialty and subspecialty care within that large service area, enabling the region's people to stay closer to home for needed and necessary medical care.

As part of the joint venture, the University, through Beyond Blue, and KDHS created Royal Blue Health LLC.[25] Effective April 1, 2021, virtually all the operating assets of KDHS, including Ashland Hospital Corporation and its subsidiaries, were transferred to Royal Blue Health LLC.[26] Under the terms of Royal Blue Health LLC's Operating Agreement, KDHS had 60% of the membership interests in Royal Blue Health LLC and the University, through Beyond Blue Corporation, had the remaining 40%.[27] A Governing Board, comprised of four members selected by KDHS

---

[23]  *See* Board Resolution: APPROVAL OF THE UNIVERSITY OF KENTUCKY'S ACQUISITION OF ROYAL BLUE HEALTH, LLC AND ALL ITS SUBSIDIARY CORPORATIONS (Oct. 27, 2022), attached as Exhibit 1,

[24]  *Id.*

[25]  *Id.*

[26]  *Id.* KDHS retained two assets—King's Daughters Health Foundation, Inc. and Integrated Health Insurance, Ltd. The University and KDHS later agreed that Beyond Blue Corp. would acquire Integrated Health Insurance, Ltd. Thus, to the best of the University's knowledge and belief, the only remaining asset of KDHS is King's Daughters Health Foundation, Inc.

[27]  Exhibit 2, Royal Blue Health LLC's Operating Agreement, p. 53. Because Beyond Blue Corporation was designated as having a minority interest, Royal Blue Health LLC originally was

4

and four members selected by the Beyond Blue Corporation, governed Royal Blue Health LLC.[28]

Under the terms of a management agreement, the University, through Beyond Blue Corporation, managed the day-to-day operations of Royal Blue Health LLC, including Ashland Hospital Corporation and its subsidiaries.[29] Additionally, the University, through Beyond Blue Corporation, had certain operational goals involving financial metrics of Royal Blue Health LLC.[30] If those operational goals were met, then the University, through Beyond Blue Corporation, would have a "member substitution" option.[31] Under the terms of the "member substitution" option, the University, through Beyond Blue Corporation, could acquire one hundred percent of the interests in Royal Blue Health LLC including Ashland Hospital Corporation and its subsidiaries.[32] Put another way, if the "member substitution" option was exercised, KDHS would have no longer have any ownership interests in Ashland Hospital Corporation and its subsidiaries.

### 2.    The University acquires UK KDMC and makes it an affiliated corporation of the University.

Based on the unaudited financial statements of Royal Blue Health LLC's fiscal year that ended September 30, 2022, the financial metrics were met, and thus the University, through Beyond Blue, had the right to exercise the member substitution

---

not an affiliated corporation of the University or even a public entity subject to the United States and Kentucky Constitution as well as those statutes applicable to public entities.

[28]    *Id.* at 25.
[29]    Management Agreement, p. 2, attached as Exhibit 3.
[30]    Royal Blue Health LLC's Operating Agreement, at p. 35, attached as Exhibit 2.
[31]    *Id.*
[32]    *Id.*

option.[33] On October 27, 2022, the Board of Trustees of the University of Kentucky exercised that option.[34]

In doing so, the Board of Trustees took several specific actions. First, it approved the acquisition of Royal Blue Health LLC including Ashland Hospital Corporation and its subsidiaries.[35] Second, it explicitly designated Royal Blue Health LLC, Ashland Hospital Corporation and all subsidiaries of Ashland Hospital Corporation as "affiliated corporations" of the University.[36] Third, it assumed "all leases, debt instruments, and liabilities" of Royal Blue Health LLC, Ashland Hospital Corporation and all subsidiaries of Ashland Hospital Corporation. Finally, it appointed the members of the Governing Board of Royal Blue Health LLC[37] and instructed the President of the University to direct Beyond Blue Corporation, as the parent corporation of Royal Blue Health LLC, to appoint the Boards for Ashland Hospital Corporation and all subsidiaries of Ashland Hospital Corporation.[38]

As a result of these actions by the University Board of Trustees, on and after December 1, 2022, UK KDMC is an affiliated corporation of the University of Kentucky. In other words, it is an alter ego of the University and has the same immunity.

---

[33] *See* Exhibit 1, at ¶ 4.
[34] *Id. See* Exhibit 4, Minutes of the Special Board of Trustees Meeting (Oct. 27, 2022); *see also* Exhibit 5, Membership Substitution Agreement.
[35] Exhibit 1 at ¶ 1; at ¶ 3 (Beyond Blue Corporation directed to take steps necessary to acquire Royal Blue Health LLC as a wholly owned subsidiary); *see also* Exhibit 4.
[36] Exhibit 1 at ¶ 4 (Royal Blue Health, LLC), ¶ 5 (Ashland Hospital Corporation, all subsidiaries of Ashland Hospital Corporation).
[37] *Id.* at ¶ 6.
[38] *Id.* at ¶ 7.

The University's actions since December 1, 2022, reinforce UK KDMC's status as part of the University. For example:

- UK KDMC Chief Executive Officer reports to and is evaluated by the University's Executive Vice President for Health Affairs;[39]

- UK KDMC legal staff is integrated into the University's Office of Legal Counsel; [40]

- UK KDMC follows Government Accounting Standards and moved to the same fiscal year as the University;[41]

- The University assumed the responsibility for all UK KDMC debt that was incurred before December 1, 2022;[42] and

- UK KDMC's budget is a component of the University's budget, which must be approved by the Kentucky legislature.[43]

In sum, UK KDMC, as an affiliated corporation of the University, is the alter ego of the University and has the same immunity as the University.

## ARGUMENT

Where, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), the Plaintiff has the burden of proving jurisdiction to survive the motion, and the court is empowered to resolve factual disputes.[44] Because UK KDMC is an affiliated corporation of the University and thus an alter ego of the University, it has the same

---

[39] *See* K. Willett, *Marks named King's Daughters president/CEO; McFann role is expanded*, UKnow | University of Kentucky News (April 26, 2023), https://perma.cc/WG4E-2ADP.

[40] *See* https://legal.uky.edu/people.

[41] KRS 164A.610(1).

[42] Exhibit 1 at ¶ 2.

[43] *Id.* at p. 2.

[44] *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

immunity as the University – and the Commonwealth -and claims against it are barred by sovereign immunity and must be dismissed.

## I.  Sovereign immunity bars Hamilton's claims against UK KDMC under the Fair Labor Standards Act.

Sovereign immunity, which is confirmed by the Eleventh Amendment,[45] bars suits against the States by Indian Tribes,[46] foreign nations,[47] and corporations created by the National Government.[48] It applies to proceedings in state court,[49] federal administrative proceedings,[50] admiralty,[51] and in situations where the State's treasury is not implicated.[52]

The Eleventh Amendment "presupposes" that each state is a sovereign entity in a federal system and that it is "inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."[53] "Courts have long read this language to mean 'that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'"[54] Indeed, there is a presumption "that the Constitution was not intended to 'rais[e] up' any

---

[45]    The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[46]    *Blatchford v. Native Vill. Of Noatak & Circle Vill.,* 501 U.S. 775, 782 (1991).

[47]    *Principality of Monaco v. Mississippi,* 292 U.S. 313, 330-32 (1934).

[48]    *Smith v. Reeves*, 178 U.S. 436, 446, 449 (1900).

[49]    *Alden v. Maine*, 527 U.S. 706, 712 (1999).

[50]    *Federal Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

[51]    *In re New York*, 256 U.S. 490, 503 (1921).

[52]    *See Doe v. Regents of the Univ. of California*, 519 U.S. 425, 431 (1997).

[53]    *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996).

[54]    *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

proceedings against the States that were 'anomalous and unheard of when the Constitution was adopted.'"[55]

Moreover, it "has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."[56] The Sixth Circuit has also recognized that the University of Kentucky "is considered an arm of the state under state law."[57]

Although sovereign immunity does not apply where Congress validly has abrogated sovereign immunity or where the Commonwealth, in the exercise of its sovereignty, has validly waived sovereign immunity, neither exception applies here.

### A.     Congress has not abrogated sovereign immunity for an FLSA claim.

In *Seminole Tribe of Fla. v. Florida*, the Supreme Court determined that the commerce power alone is insufficient authority for Congress to abrogate state sovereign immunity.[58] In *Alden v. Maine*, the Supreme Court has expressly said so in the context of the FLSA, holding "that the States retain immunity from private suit in their own courts."[59] Following this Supreme Court precedent, the Sixth Circuit has barred FLSA claims against the Commonwealth (and other states) in federal court.[60]

---

[55]   *Federal Mar. Comm'n*, 535 U.S. at 755 (quoting *Hans v. Louisiana*, 134 U.S. 1, 18 (1890)).

[56]   *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997) (collecting cases).

[57]   *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

[58]   517 U.S. 44, 76 (1996).

[59]   *Alden v. Maine*, 527 U.S. 706, 754 (1999); *Id.* at 758 ("Congress must accord States the esteem due to them as joint participants in a federal system, one beginning with the premise of sovereignty in both the central Government and the separate States. Congress has ample means to ensure compliance with valid federal laws, but it must respect the sovereignty of the States.").

[60]   *Jackson v. Kentucky*, 129 F.3d 1264 (Table), 1997 WL 720457 (6th Cir. 1997); *see also Wilson-Jones v. Caviness*, 99 F.3d 203, 211 (6th Cir. 1996) (overruled on other grounds) (holding that in

As the Court explained, "FLSA's wage and hour provisions were enacted pursuant to Congress's commerce power and further that the commerce power alone is insufficient authority for Congress to abrogate state sovereign immunity."[61] The Sixth Circuit has reached the same result for FLSA claims against state universities,[62] and this Court has as well for FLSA claims against Kentucky's state universities: "Eleventh Amendment immunity bars suit under the FLSA by private citizens against the State in federal court."[63]

### B. Kentucky has not waived its immunity for an FLSA claim.

True, a state *may* waive its sovereign immunity, but there has been no waiver of sovereign immunity for an FLSA claim. In "deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [a court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction."[64] "[A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."[65]

---

[  ] an FLSA claim, "[t]hat part of the action against the State is barred directly by *Seminole Tribe*"); *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 907 (6th Cir. 2014).

[61] *Jackson*, 1997 WL 720457.

[62] *Wong-Opasi v. Tennessee State University*, 229 F.3d 1155 (6th Cir. 2000) ("Eleventh Amendment immunity bars suit under the FLSA by private citizens against the state in federal court. …Because this appeal falls squarely under the purview of *Wilson-Jones*, the district court properly dismissed Wong-Opasi's FLSA claims against the state university, the board of regents, and the individual defendants in their official capacities).

[63] *Heavin v. Kentucky State Univ.*, No. 3:19-CV-00045-GFVT, 2019 WL 5847834, at *3 (E.D. Ky. Nov. 7, 2019) (dismissing an FLSA claim against the state university).

[64] *Jackson*, 1997 WL 720457, at *2 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

[65] *Id.*

Plaintiff can point to no authority that the Commonwealth of Kentucky has waived its sovereign immunity to permit an FLSA claim. In fact, the Sixth Circuit has rejected the argument.[66] Hamilton's FLSA claim against UK KDMC must then be dismissed.

## III.    The state law claims should be dismissed.

The rest of the Complaint includes three state law claims against the University under the Kentucky Wage and Hour Act. The Court should either dismiss those claims under the Eleventh Amendment or exercise its discretion to decline supplemental jurisdiction over such state law claims.

Sovereign immunity is a "personal privilege which [a State] may waive at pleasure,"[67] the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one."[68] A State does "not consent to suit in federal court merely by consenting to suit in the courts of its own creation, . . . [n]or does it consent to suit in federal court merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'"[69] Instead, a "State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued."[70]

The Supreme Court of Kentucky has not directly held that the Commonwealth has waived its immunity for state employees to bring claims under KRS Chapter

---

[66]    *Jackson*, 1997 WL 720457, at *2 ("We find no such waiver here.").
[67]    *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).
[68]    *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985).
[69]    *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).
[70]    *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

11

337.[71] Regardless of whether the University's immunity has been waived under KRS Chapter 337 for claims brought in Kentucky state courts for a Kentucky state law claim, there "is no suggestion"—in that holding or in the statute's text—that the General Assembly or the University "expressly consented to being sued in federal court. Nor is this a case in which the State has affirmatively invoked" federal jurisdiction.[72] On this basis, the Kentucky statutory claims are barred in this Court the Eleventh Amendment.

Regardless, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."[73] Thus, "when"—as here—the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."[74] For this reason, the Court should dismiss the state law claims.

---

[71]    To be sure, other courts have concluded otherwise, and UK KDMC reserves the right to raise the issue of whether the General Assembly has waived immunity for state employees under KRS Chapter 337. Kentucky's state courts though—and its highest court—should be the venue to address the Commonwealth's potential waiver of immunity for a claim under Kentucky law.

[72]    *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

[73]    28 U.S.C. § 1367(c)(3); *see also Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 908 (6th Cir. 2014) (affirming the district court exercise of discretion in "declin[ing] to exercise supplemental jurisdiction" over those state law wage and hour "claims because it had dismissed all of the plaintiffs' federal claims").

[74]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## **<u>CONCLUSION</u>**

For all these reasons, the Court should dismiss the Complaint.

Respectfully submitted,


*/s/ Bryan H. Beauman*
Bryan H. Beauman
Derek T. Wright
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
Telephone No.: (859) 255-8581
Facsimile No.: (859) 231-0851
BBeauman@sturgillturner.com
DWright@sturgillturner.com
Carmine@sturgillturner.com

&

William E. Thro
University of Kentucky
301 Main Building
Lexington, Kentucky 40506
Telephone: (859) 257-2936
William.Thro@uky.edu
COUNSEL FOR DEFENDANT

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 23, 2025, the foregoing document was electronically filed with the Clerk of this Court using the Court's CM/ECF system, which will send notification of such filing to all parties registered to receive electronic filings.

*/s/ Bryan H. Beauman*
COUNSEL FOR DEFENDANT